THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CR-50-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MARVESA LANATAE MCLAURIN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion by defendant Marvesa Lanatae McLaurin ("defendant") to suppress statements she made to law enforcement officials during an April 21, 2003 interview. [DE-19]. The government filed a response in opposition to the motion. [DE-24]. The court held an evidentiary hearing on October 29, 2008 to develop the record. Accordingly, this matter is ripe for review. For the reasons stated below, it is recommended that defendant's motion be denied.

## PROCEDURAL BACKGROUND

On May 7, 2008, defendant was charged by indictment with five counts of perjury in violation of 18 U.S.C. § 1623. [DE-1]. These offenses allegedly occurred when defendant testified before a federal grand jury on January 3, 2007. At the suppression hearing, defendant presented no witness testimony, but proffered her own affidavit in support of her motion. The government presented the testimony of SBI Agent Christy Brewington ("Agent Brewington"), who questioned defendant during the April 21, 2003 interview, and Captain Ron Lessard ("Captain Lessard") of the Sampson County Sheriff's Office, who observed the interview. Transcript of Hearing at 30:3-9, 54:16-18 ("Tr."). Both parties submitted motions, sworn statements and exhibits for consideration.

## STATEMENT OF THE FACTS

Defendant is a former employee of Roseboro Urgent Care, where she assisted Perry Reese, M.D. ("Reese"). Tr. 16:12-22; [DE-24-2], Ex. A. On April 9, 2003, the SBI arrested Reese for allegedly writing prescriptions in exchange for payment and conducted a search of his medical office. United States' Resp. to Def.'s Mot. to Suppress at 1-2 ("Gov't Resp.") [DE-24] Tr. at 4:11-15. As part of its investigation of Reese, the SBI conducted interviews of Reese's employees, including defendant, on or near the time of Reese's arrest. Tr. 5:8-9, 24-25, 11:5-6, 37:22-23. At the time, defendant was 17 years old. Aff. of Marvesa Lanatae McLaurin ¶1 ("McLaurin Aff.") [DE-20]. Defendant was interviewed by Agent Brewington and Captain Lessard. Dec. of Christine Brewington ¶10 ("Brewington Dec.") [DE-24-3], Ex. B; Dec. of Captain Ron Lessard ¶2 ("Lessard Dec.") [DE 24-4], Ex. C. The SBI did not consider defendant a suspect or target of the investigation of Reese and neither Agent Brewington nor Captain Lessard was aware of any potential criminal charges against defendant. Tr. 4:19-23; 34:20-22; 16:1-3; 52:9-11; 55:12-16.

Agent Brewington testified that she scheduled the interview with defendant after her many voicemails and messages on defendant's cell and home telephones were unanswered.[1] Tr. 6:17-21, 22:6-8. Consistent with her standard practice, Agent Brewington did not document her attempts to contact defendant. Tr. 21:20-24, 22:1-2, 23:5-6. When leaving messages, Agent Brewington identified herself as a special agent with the SBI and explained her request for an

---

[1] According to defendant's affidavit testimony, Agent Brewington scheduled the interview during a telephone conversation with defendant's mother, Linda Burney ("Burney"). McLaurin Aff. ¶2. However, Agent Brewington denied having contacted Burney to assist in scheduling a meeting with defendant. Tr. 22:14-17. Agent Brewington explained that since defendant was a witness and not a suspect or a victim, it was not necessary for Agent Brewington to contact Burney. Tr. 34:9-22.

2

interview to discuss any information that defendant may have in regard to the Reese investigation. Tr. 6:24-25, 7:1-4. Believing defendant was not receiving her messages, Agent Brewington left one final message wherein she explained her intent to visit defendant's high school in order to provide defendant with her contact information. Tr. 7:21-25, 33:17-20. Agent Brewington testified that shortly thereafter defendant contacted her and that upon learning the purpose of the agent's prior phone calls, defendant inquired as to whether her mother could attend the interview and whether defendant could contact her mother before committing to the interview. Tr. 8:8-10, 17-24. Agent Brewington responded to both requests in the affirmative. *Id.*

According to defendant's affidavit, however, Brewington insisted on interviewing defendant and "stated that she [Agent Brewington] would go to my school and conduct the interview there if she had to." McLaurin Aff. ¶5. Defendant felt "forced to consent" to the interview and that she "had no choice but to say yes." McLaurin Aff. ¶6. Defendant stated further that Agent Brewington "told my mother and me that this interview was going to happen, 'one way or another.'" *Id.* ¶ 7. Agent Brewington denied this description of the facts, including ever informing defendant or Burney that an interview was mandatory. Tr. 9:17-23.

Agent Brewington consulted with defendant in determining the interview time, place and location. Tr. 9:9-7, 23:21-23, 24:9-12, 56:18-19. In response to defendant's refusal to allow Agent Brewington to conduct an interview in defendant's home, Agent Brewington suggested and defendant agreed to meet at the Sampson County narcotics office, a branch of the Sampson County Sheriff's Office. [DE-24-2], Ex. A; Tr. 9:9-10, 10:16-17, 24:11-12, 32:20-25, 33:2-3. Agent Brewington selected this location because the building was unmarked, it was not located

3

at the Sheriff's Office and it provided privacy.[2] Tr. 47:19-20, 48:13-17, 22-25, 50:21-25, 57:20-22. Captain Lessard described the building in which the narcotics office is located as a warehouse, converted to office spaces, and surrounded by an eight-foot wire fence with barbed wire. Tr. 57:11-12, 59:1-9.

Agent Brewington and Captain Lessard met defendant and Burney at the narcotics office and escorted them to a large, windowless conference room where the interview took place. McLaurin Aff. ¶9; Tr. 25:3-4, 29:18, 52:14-15, 62:8-9. Agent Brewington and Captain Lessard sat on one side of the table and defendant and her mother sat directly across from them. Tr. 35:16-20; 64:6-7. The interview lasted approximately one hour and a half. Tr. 46:4.

Agent Brewington asked the questions of defendant during the interview and took notes while Captain Lessard observed. Tr. 11:7, 53:5-7, 54:18, 56:4-8, 66:14-16. Agent Brewington testified that she began the interview by (1) informing defendant that she was not in trouble; (2) stating the purpose of the interview was to discuss any information defendant had regarding Reese's medical practice and (3) explaining that the SBI was interviewing all of Reese's employees as part of its investigation of Reese.[3] Tr. 37:3-8, 22-23, 53:12-13, 67:19-22. Agent Brewington stated further that she provided defendant with a brief summary of information discovered thus far in the investigation in an attempt to "generate a rapport" given defendant "was 17 and ...was being interviewed by law enforcement." Tr. 38:4-5, 10, 15-16, 39:8-25.

---

[2] Agent Brewington explained she "was trying to suggest a place where it would be relatively quiet. There wouldn't be a lot of traffic, a lot of public, people coming in and out and to kind of ease whatever concerns [defendant] may have as far as that." Tr. 48:14-17.

[3] Following this recitation, Agent Brewington testified that Burney commented "we don't have anything to hide" and "I'm [Burney] not going to jail for anybody." Tr. 36:20-23.

4

Captain Lessard testified that he did not recall the specific statements made by Agent Brewington, defendant or Burney during the course of the interview. Tr. 69:7-16.

Agent Brewington testified that defendant did not appear to be very nervous initially; however, defendant's "attitude changed quite a bit" as the interview progressed.[4] Tr. 39:1-3. Neither Agent Brewington nor Captain Lessard raised their voices during the interview with defendant, nor did they handcuff or otherwise physically restrain defendant at any time. Tr. 15:5-11, 53:24-25, 54:1-3, 54:11-12. According to defendant's affidavit testimony, however, defendant "did not feel free to leave" and "felt detained and confined." McLaurin Aff. ¶¶13-14. Furthermore, defendant averred, "[Agent] Brewington put a large, black notebook and her gun on the table in a manner that seemed threatening to me" and "I was nervous and anxious because of the gun." *Id.* ¶¶ 15-16. Both Agent Brewington and Captain Lessard wore their guns during the interview. Tr. 14:22, 53:15-16, 63:2. However, each testified that neither of them placed their guns on the table and in fact, never removed their guns from their holsters during the interview. Tr. 14:9-14, 17-21, 65:19-22. Captain Lessard stated that he has a tendency to place his cell phone on the table but could not recall doing so during defendant's interview. Tr. 65:14-16, 80:24-25.

Agent Brewington testified that she repeated often defendant's responses to ensure accurate note-taking. Tr. 41:3-6. However, Agent Brewington was not able to "review the last little bit" of her notes as defendant abruptly left the interview following a question concerning possible sexual conduct by Reese. Tr. 41:7-10, 45:23-24. Captain Lessard could not recall

---

[4] Agent Brewington's typewritten notes created subsequent to the interview state that "[t]hroughout the entire interview, [defendant] was defensive and somewhat sarcastic and when questioned about discrepancies in her comments, this became more obvious...." [DE-24-2], Ex. A.

5

Agent Brewington providing defendant an opportunity to review her notes or periodically reviewing her notes with defendant to confirm the accuracy of her note-taking. Tr. 75:19-24. He stated further that during his "half a dozen operations" with Agent Brewington, it is her practice to review her notes at the end of the interview only. Tr. 77:14, 78:1-7.

The last question Agent Brewington asked defendant was whether Reese had made any inappropriate advances or touched her inappropriately.[5] Tr. 12:20-22. When Burney demanded that defendant "just answer the question yes or no," Tr. 42:4, Agent Brewington testified that defendant became "defensive and upset," replied "no," then left the interview and walked out of the building. Tr. 13:15-19, 43:10-12, 73:10-11. Captain Lessard testified that defendant became "defensive" and "[k]ind of withdrew a bit" and that her "voice crackled." Tr. 71:23-24, 72:2-3, 21. Burney left the interview a few minutes later. Tr. 43:15-16, 54:21-23, 70:5-8, 74:5-6.

## DISCUSSION

Defendant has moved to suppress all statements she made during the April 21, 2003 interview on the grounds that the interview was a custodial interrogation undertaken without the prior provision of *Miranda* warnings. [DE-19]. In the alternative, defendant has moved that the statements should be suppressed because they were not made voluntarily. The government contends that the interview was not custodial and that defendant's statements were made voluntarily. [DE-24].

---

[5] Agent Brewington explained that based on medical board findings, Reese had a history of touching patients inappropriately. Since the SBI was "investigating all possible options from our witnesses," she felt it was necessary to question defendant about any sexual contact with Reese. Tr. 13:20-25.

6

### A. Defendant was not "in custody;" thus, *Miranda* does not apply.

Defendant contends her interview was custodial for the following reasons: (1) she was forced to participate in the interview by Agent Brewington's alleged threat to question defendant at her school; thus, the interview was involuntary; (2) the door to the conference room remained closed during her interview; (3) the officers did not inform defendant that she was free to leave and (4) Agent Brewington placed a gun on the table. Mem. of Law in Supp. of Mot. to Suppress Evidence at 3 ("Def.'s Mem.").

Before addressing the substantive issues, the court considers first the weight, if any, this court should afford defendant's affidavit testimony. After observing the testimony of the witnesses at the hearing and assessing their demeanor on the stand, under direct and cross examinations, the court finds the testimony of the government's witnesses to be credible and consistent. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court). Conversely, this court recommends assigning little credibility to defendant's affidavit.

Persons subjected to custodial interrogation are entitled to the procedural safeguards prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966). *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). In *Miranda*, the Supreme Court recognized that "in-custody interrogation" places "inherently compelling pressures" on persons interrogated. *Miranda*, 384 U.S. at 467. Thus, to safeguard the Fifth Amendment privilege against self-incrimination, *Miranda* warnings must be provided during custodial interrogations. *Id.* at 444. Absent formal arrest, *Miranda* warnings only apply "where there has been such a restriction on a person's freedom as to render him '"in custody."' *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam).

In determining whether a person is "in custody," the question is whether, examining the totality of the circumstances, a reasonable person in defendant's position would have felt "at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."). In making the "in custody" determination, courts may consider a variety of factors, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) the use of coercive tactics including hostile voice tones, displaying weapons, or physically restraining the suspect; and (5) whether the suspect voluntarily submitted to questioning. *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir.) (citations omitted), *cert. denied*, 547 U.S. 1208 (2006); *see also Yarborough v. Alvarado*, 541 U.S. 652, 669 (2004) (considering factors such as coercive tactics, length of the interrogation and whether defendant was offered a break in determining whether a defendant was "in custody"). This court is mindful that defendant was a minor at the time of the interview and accordingly must consider this factor under the "totality of the circumstances" standard.[6] *See Fare v. Michael C.*, 442 U.S. 707, 725

---

[6] The Supreme Court has explained that the *Miranda* "custody inquiry states an objective rule designed to give clear guidance to the police, while consideration of a suspect's individual characteristics - including his age - could be viewed as creating a subjective inquiry." *Yarborough v. Alvarado*, 541 U.S. 652, 669 (2004) (holding the state court did not err in failing to account for a seventeen-year-old suspect's age and inexperience in finding suspect was not "in custody"). The *Yarborough* court concluded "the objective *Miranda* custody inquiry could reasonably be viewed as different from doctrinal tests that depend on the actual mindset of a particular suspect, where [courts] do consider a suspect's age and experience." *Id.* at 541 U.S. at 667. In her concurring opinion, Justice O'Conner explained that "[e]ven when police do know a suspect's age, it may be difficult for them to ascertain what bearing it has on the likelihood that the suspect would feel free to leave." *Id.* at 541 U.S. at 670 (O'Connor, J., concurring). Nonetheless, "[t]here may be cases in which a suspect's age will be relevant to the *Miranda* 'custody' inquiry." *Id.*; *see Alvarado v.*

(1979) (explaining the totality-of-the-circumstances approach "permits...inquiry into all the circumstances surrounding the interrogation[,]...includ[ing] evaluation of the juvenile's age, experience, education, background and intelligence...").

Considering all the circumstances, the court concludes defendant was not "in custody" during the April 21, 2003 interview. While the length of defendant's interview may weigh in favor of finding custody, *see Yarborough*, 541 U.S. at 665 (citing 17-year-old defendant's two-hour interview as a factor weighing in favor of the view that defendant was "in custody"); *see also United States v. Fernandez-Ventura*, 132 F.3d 844, 847 (1st Cir. 1998) (finding that the duration of the interrogation, on its own, is not a determinative factor), the following factors militate against finding that defendant was "in custody." First, as for defendant's status as a juvenile, the court notes that defendant's mother attended the interview and at times, interjected during the interview and encouraged defendant to respond to questioning. *Cf. Yarborough*, 541 U.S. at 670 (Breyer, J., dissenting) (contending 17-year-old juvenile defendant "in custody" where officer refused to allow parents to be present during interview); *cf. also A.M. v. Butler*, 360 F.3d 787, 797 (7th Cir. 2004) (finding 11-year-old defendant "in custody" during a two hour interrogation "with no parent, guardian, lawyer or anyone at his side"); Tr. 12:2-3. For example, following defendant's statement that she wrote receipts for patients who came in and bought prescriptions, defendant's mother exclaimed, "[W]hy would you do that? Nobody else does that." Tr. 12:18-19. Moreover, defendant's mother encouraged defendant to respond to Agent Brewington's inquiry as to whether Reese had made any inappropriate advances toward

---

*Hickman*, 316 F.3d 841, 851 (9th Cir. 2002), *cert. granted sub nom., Yarborough v. Alvarado*, 539 U.S. 986 (2003) (collecting state cases evaluating whether a juvenile is "in custody" and noting such cases "ruled that juvenile status is relevant, either as a factor under the totality of circumstances test or by modifying the usual reasonable person standard").

9

defendant. *See United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998) (finding defendant not "in custody" where parents attended interview and encouraged defendant to speak to the officers on several occasions); Tr. 12:20-22.

Second, although the officers did not notify defendant that she was free to leave, Agent Brewington explained to defendant that Reese was the sole focus of the SBI's investigation and assured defendant that she was not a target of the investigation. *See United States v. Fish*, 432 F.2d 107 (4th Cir. 1970) (holding defendant was not "in custody" where investigation had not focused on defendant); *see also Stansbury v. Cal.*, 511 U.S. 318, 325 (1994) (explaining an officer's beliefs concerning the potential culpability of the individual being questioned may bear upon the custody issue if they are conveyed to the individual being questioned); Tr. 11:1-4, 37:3-8, 53:12-14. Third, Agent Brewington consulted with defendant in determining the interview time, place and location and in fact, offered defendant the opportunity to conduct the interview in the comfort of defendant's home. Tr. 23:21-24, 24:6-12. Moreover, defendant arrived voluntarily at the interview. *See United States v. Uzenski*, 434 F.3d 690, 705 (4th Cir. 2006) (considering defendant's voluntary arrival at SBI office as a factor weighing in favor of lack of custody). Fourth, defendant was not physically restrained during the interview and there is no evidence that the conversation between Agent Brewington and defendant was threatening in tone. *See id.* at 704-05 (concluding defendant was not "in custody" where tone of discussion was not threatening and he was not forcibly restrained); Tr. 15:5-11, 53:24-25, 54:1-3, 54:11-12. Finally, even assuming *arguendo* that Agent Brewington placed her gun on the table during the interview, defendant's contention that it served as a "deterrent to [her] freedom" is belied by the fact that defendant in fact terminated the interview prematurely and exited the building.

10

The facts in this case fail to support defendant's claim that a reasonable person in her position would have understood that she was "in custody." Judged by a "totality of the circumstances" standard, defendant's freedom of action was not curtailed to a degree associated with formal arrest.

**B.  Defendant's statements were not involuntary.**

Next, defendant asserts that her statements should be suppressed because she did not make them voluntarily. Def.'s Mem. at 4. In particular, defendant contends Agent Brewington's alleged threat to interrogate her at school and the agent's placement of a gun on the table during the interview were sufficiently coercive that defendant made her statements involuntarily. *Id.*

"A statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (citations omitted). A statement will be deemed involuntary if the defendant's will has been "overborne" or her "capacity for self-determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987). The voluntariness of a defendant's statement turns on the "totality of the circumstances," including the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Pelton*, 835 F.2d at 1071.

This court finds that defendant's statements were voluntary under the totality of the circumstances. The officers' testimony indicates a routine and benign investigatory scenario: Agent Brewington prearranged the interview with defendant, defendant was not under arrest, defendant's mother was present during the interview and defendant was not taken into custody subsequent to the interview. *See Braxton*, 112 F.3d at 781; *see also United States v. Three Juveniles*, 886 F. Supp. 934, 942 (D. Mass. 1995) (finding high school senior's will was not overborne given his parents were present at questioning and he had been forewarned of the

11

interview). While Agent Brewington testified that defendant's demeanor changed over the course of the interview, the fact defendant terminated the interview on her own accord indicates that the officers were not so intimidating and overpowering that defendant's will was oppressed. Tr. 39:1-3.

## CONCLUSION

For the reasons set forth above, this court RECOMMENDS that defendant's Motion to Suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 14th day of November, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge